UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS J. LA CASSE and JOSEPH LA CASSE,<br><br>      Plaintiffs,<br><br>v.<br><br>AURORA LOAN SERVICES, LLC; U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE LEHMAN XS TRUST, SERIES 2007-2N; JOHN DOES 1-4; MORTGAGE CONTRACTING SERVICE, INC., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.<br><br>      Defendants. | Civil Action No. 15-11672 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS VERIFIED COMPLAINT**

## I.      Introduction

Defendants Aurora Loan Services, LLC ("Aurora"), U.S. Bank, National Association, as Trustee for the Lehman XS Trust, Series 2007-2N ("U.S. Bank, N.A., as Trustee"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants") have moved, pursuant to Fed. R. Civ. P. Rule 12(b)(6), to dismiss the Verified Complaint ("Complaint") filed by Plaintiffs Thomas J. ("Thomas") and Joseph La Casse ("Joseph") (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted. Defendants' motion to dismiss must be granted because none of Plaintiffs' challenges concerning the foreclosure and property preservation actions taken in relation to the property located at 270 Park Drive, Longmeadow, MA ("Property") state a plausible claim as a matter of law.

As set forth more fully, below, this is the fourth time that Thomas and his counsel, Laird Heal, Esq. ("Attorney Heal"), have sought judicial intervention concerning the Property.

Consequently, the Complaint is marred by a host of procedural deficiencies.  First, the present Complaint is but a mere regurgitation of claims that were alleged, or could have been alleged, by Thomas in the civil action he brought in Connecticut Superior Court in 2010 challenging the foreclosure of the Property and, thus, are precluded on the grounds of *res judicata*.  Second, Thomas lacks standing to assert these causes of action because the claims, which arose prior to or during the pendency of Thomas's Chapter 7 bankruptcy case, became the assets of his bankruptcy estate and, thus, may only be asserted by the Chapter 7 Trustee.  Third, even if the foreclosure by sale was somehow deficient – which it was not – Plaintiffs' claims are barred by the statute of limitations where Aurora made a foreclosure by entry, pursuant to M.G.L. c. 244 §2, more than five years ago.  Similarly, the remainder of Plaintiffs' claims, which all arise from the purported improper 2009 assignment and 2010 foreclosure, are barred by their respective statutes of limitations.

Substantively, while the Complaint is far from a paragon of coherence, it appears that all eleven counts alleged by Plaintiffs rest, in part, on the misbegotten legal theory that "because [MERS] has no interest in the Note, and never [had] any interest in the Note …" an assignment from MERS is void and any actions relying upon this assignment, including the foreclosure and Defendants' later property preservation actions, are similarly invalid.  Compl., at ¶¶ 42; *see also, e.g.,* ¶¶ 43-47, 49-52, 55-57, 61-63, 65-68, 70-75, 78-81, 83-85, 88-97, 99, 103-106, 108-115. Massachusetts law is clear, though, that MERS "has the right to exercise any or all" interests of the assignee, including "the right to foreclose and sell the property" and assign a mortgage. *Eaton v. Federal National Mortgage Ass'n*, 462 Mass. 569, 572 (2012); *see also Culhane v. Aurora Loan Servs. of Neb.,* 708 F. 3d 282, 291-93 (1st Cir. 2013) ("MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the

2

member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law.").

And, while Plaintiffs' claims should all be dismissed where they are predicated on the purportedly "improper" or "void" assignment from MERS, Defendants' motion to dismiss should also be granted because none of the challenges state a plausible claim as a matter of law. Several of the claims are improperly styled and/or fail to plead even the essential elements, and the factual allegations made by Plaintiffs are incapable of sustaining their claims. For example, Plaintiffs fail to identify: any specific contractual provisions that were breached; any conduct that could plausibly be characterized as fraudulent, unfair, immoral, or oppressive; or any actual injury resulting from Defendants' alleged conduct. Moreover, the Complaint fails to set forth exactly what U.S. Bank, N.A., as Trustee, is alleged to have done, and why it has been named in the Complaint. Rather, Plaintiffs largely "lump" all of the defendants together, and fail to explain what role each entity is supposed to have played in the Complaint's allegations. This tactic fails to satisfy even the most basic of pleading standards.

The claims asserted individually by Joseph are similarly frivolous. Prior pleadings presented to the bankruptcy court, including an executed affidavit from Joseph, himself, establish that immediately prior to and immediately after the November 22, 2010 foreclosure sale Joseph's residence was 133 Colony Road, Longmeadow, Massachusetts and, accordingly, Joseph was not a tenant as of the foreclosure. To the extent Joseph executed a lease post-foreclosure, any liability stemming therefrom would rest, not with Defendants, but with Thomas, who was aware that he no longer owned the Property. And, as with Thomas' claims, even if Joseph's allegations had any legal merit – which they do not - the counts are pled with such little specificity that they fail to meet the minimal pleading standards.

In summary, this Complaint lacks any merit and represents a bad faith pleading. The Complaint is peppered with deceitful factual allegations, the arguments asserted are both precluded by prior actions and not warranted under existing law, and the circumstances surrounding the timing of this action demonstrate that it was interposed for the purposes of further delaying a summary process action that has been pending since 2011. Such misconduct should not be countenanced. Accordingly, where both Plaintiffs and their counsel were aware of these deficiencies prior to filing this action, and where they have failed to revise their allegations or review the state of the present law - even after discussions with Defendants' counsel - Plaintiffs and their counsel should be sanctioned, and Defendants should be reimbursed for their costs and attorneys' fees incurred in responding to this action.[1]

## II.   Procedural and Factual Background

### A.   The Loan Documents

1.      On or about November 9, 2006, Plaintiff Thomas purchased the property located at 270 Park Drive, Longmeadow, Massachusetts ("Property"). *See* ECF No. 1, Exh. B ("Compl."), at ¶25; *see also* Compl., at Exh. 5.

2.      On or about November 15, 2006, Plaintiff Thomas J. La Casse executed a promissory note (the "Note") in the principal amount of $600,000.00, which was payable to Homecomings Financial, LLC (f/k/a Homecomings Financial Network, Inc.) ("Homecomings"). The Note contains two indorsements: one is a special indorsement from Homecomings Financial, LLC to Residential Funding Company, LLC on the last page of the Note, and an allonge affixed

---

[1]      Pursuant to Fed. R. Civ. P. 11, a separate motion for sanctions will be filed with this Court in the event that Plaintiffs fail to voluntarily dismiss this case within the safe harbor period.

to the Note further contains a blank indorsement from Residential Funding Company, LLC, a

copy of which is attached hereto as Exhibit 1.[2]

     3.     The Note was secured by a mortgage on the Property ("Mortgage") granted by

Thomas J. LaCasse to Mortgage Electronic Registration Systems, Inc. ("MERS"),

"as a nominee for Lender [Homecomings Financial, LLC] and Lender's successors and assigns,"

dated November 15, 2006, in the principal amount of $600,000.00, and recorded with the

Hampden County Registry of Deeds ("Registry") in Book 16332, Page 249.  *See* Compl., at

¶¶ 26 – 29, 31; *see also* Compl., Exh. 3.

     4.     The Mortgage states that "MERS is the mortgagee under this Security

Instrument," and provides that:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all
> renewals, extensions and modification of the Note; and (ii) the performance of
> Borrower's covenants and agreements under this Security instrument and the
> Note.  For this purpose, Borrower does hereby mortgage, grant and convey to
> MERS (solely as nominee for Lender and Lender's successors and assigns) and to
> the successors and assigns of MERS, with Mortgage Covenants upon the
> Statutory Condition and with the Statutory Power of Sale, the [Property].

*See* Compl., Exh. 3, at 3.

     5.     MERS assigned the Mortgage to "Aurora Loan Services LLC" by assignment

dated July 31, 2009 ("Assignment") and recorded with the Registry in Book 17990, Page 528.

---

[2]     This document, as with the other material documents referenced and relied upon – but not provided - in the Complaint, may be considered by this Court without converting the Motion to Dismiss into a motion for summary judgment.  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (when "a complaint's factual allegations are expressly linked to . . . a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  "When such documents contradict an allegation in the complaint, the document trumps the allegation."  *Lowenstern v. Residential Credit Solutions*, Civ. No. 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) (citing *Clorox Co. P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).  In deciding a motion to dismiss under Rule 12(b)(6), a court may consider "official public records[,] documents central to plaintiff['s] claim [and] documents sufficiently referred to in the complaint."  *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).  Moreover, where, as here, the documents referenced were previously filed in a connection with a prior judicial proceeding, such materials may be considered by the Court.  *See Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co.*, 547 F .3d 48, 51 (1st Cir.2008) (noting that a court may take into account the record of a prior action where the motion to dismiss is premised on a defense of res judicata).

*See* Compl. at ¶32; *see also* Compl., at Exh. 2.  The Assignment was signed by Theodore Schultz ("Schultz"), in his capacity as Vice President of MERS, and was notarized by a notary public for the State of Nebraska.  *See id.*

**B.      *Thomas LaCasse's Bankruptcy*.**

6.      On or about January 19, 2010, Thomas filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts, *see In re La Casse*, No. 10-30088 (Bankr. D. Mass.) ("Bankruptcy Action"), wherein he disclosed approximately $4.1 million in real property assets and listed Aurora Loan Services as holding a secured claim on the Property in the amount of $635,581.11.  *See id.*, ECF No. 1, Debtor's Voluntary Petition, attached hereto as Exhibit 2, at Schedules A, D.[3]  The Property was not claimed as exempt, nor did Thomas disclose any rental income or outstanding leases related to the Property.  *See id.*, at Schedules C, G, I.

7.      On or about March 1, 2010, Aurora Loan Services, LLC filed a proof of claim itemizing more than $40,000 in pre-petition arrearages, including roughly $37,000.00 owed for ten months' of overdue mortgage payments from April 2009 through January 2010.  *See* Bankruptcy Action, Claim No. 3-1, attached hereto as Exhibit 3, at 2.

8.      On or about May 28, 2010, Joseph B. Collins of Hendel & Collins, P.C., 101 State Street, Springfield, MA 01103, was appointed the Trustee ("Trustee") of Thomas' Chapter 11 bankruptcy estate ("Estate").  *See id.*, at ECF No. 41.

---

[3]      *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *see also In re Colonial Mort. Bankers Corp.,* 324 F.3d 12, 19 (1st Cir.2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.").

9.      On or about June 17, 2010, the Trustee moved to convert Thomas' case to a Chapter 7 bankruptcy on the grounds that liquidation of Thomas' assets was "in the best interest of creditors."  *See id.*, ECF No. 54, attached hereto as Exhibit 4.

10.      The Trustee's Motion was granted on June 21, 2010, and Thomas' bankruptcy was converted to a Chapter 7 proceeding.  *See id.*, at ECF No. 64.

11.      On July 2, 2010, the Trustee filed a Motion to Compel Turnover, seeking an order that Thomas be required to turnover certain property, including a $10,000 retainer paid to Attorney Heal.  *See id.*, ECF No. 79, attached hereto as Exhibit 5, at ¶ 4(h).  This motion resulted in quite a bit of motion practice, including a motion by Joseph, who alleged that he had actually loaned the money for the retainer to Thomas and, thus, the money do not belong to the Estate.

12.      In his pleadings to the Bankruptcy Court, Joseph affirmed that his address was 133 Colony Road, Longmeadow, MA 01106.  *See id*., ECF Nos. 163, 164, 238, attached hereto as Exhibit 6.  These pleadings were filed between October 20, 2010 and March 8, 2011 – the period immediately before and after the foreclosure on the Property.

13.      While the parties were disputing the retainer issue, on July 8, 2010, Aurora filed a Motion for Relief From Stay in order to "enforce its rights under its loan documents," including "taking possession of the mortgaged premises, and/or foreclosing …." *See id.*, at ECF No. 88, attached hereto as Exhibit 7.

14.      Absent any opposition from Thomas, on September 2, 2010, the Court granted Aurora's Motion for Relief From Stay.  *See id.*, ECF No. 141, attached hereto as Exhibit 8.

15.      On or about November 19, 2010, the Trustee filed an Emergency Motion to Abandon the Property on the grounds that the Property was of inconsequential value in light of the encumbrances on the Property, and sought to abandon the Property in order to avoid

incurring any taxes due from capital gains realized from the foreclosure sale. *See id.*, ECF No. 188, at ¶¶ 5-11. This Motion was granted that same day. *See id.*, ECF No. 191.

16.   On May 22, 2012, the Court issued a discharge of Thomas' Chapter 7 case. *See id.*, ECF No. 271.

**C.  The Foreclosure.**

17.   Prior to the bankruptcy filing, on September 15, 2009, Aurora filed a Summons and Complaint to Foreclose with the Commonwealth of Massachusetts Land Court, which was recorded in the Registry at Book 18481, Page 599. Subsequently, the Land Court issued a Complaint and Judgment permitting Aurora to commence sale of the Property in accord with the powers of sale contained in the Mortgage, which was duly recorded in the Registry at Book 18726, Page 49, copies of which are attached hereto as Exhibits 9 and 10, respectively.

18.   On or about October 21, 2010, Aurora, through counsel Harmon Law Offices, notified Thomas of the pending foreclosure sale by certified mail at, *inter alia*: (i) Plaintiff's home address of 153 Valley Forge Road, Weston, CT 06833; (ii) the subject Property; (iii) Plaintiff's property, at 134 Normandy Road, Longmeadow, MA 01106; (iv) the offices of Attorney Heal; (v) the offices of Thomas' former counsel, Steven Weiner; and (vi) the offices of the Chapter 7 Trustee, copies of which are attached hereto as Exhibit 11.[4]

19.   For three consecutive weeks, Aurora caused a notice of sale to be published on October 29, 2010, November 5, 2010, and November 12, 2010 in issues of The Republican, a newspaper with general circulation in Longmeadow, Massachusetts. *See* Foreclosure Deed by

---

[4]   These documents were previously filed with the Connecticut Superior Court in conjunction with Defendant's Motion for Summary Judgment. *See Lacasse v. Aurora Loan Services, LLC et al.*, No. FST-cv-10-6007676-S (Ct. Sup. Ct. Stamford Cty.), Dkt. No. 111.00, Motion for Summary Judgment and attendant Affidavit, attached hereto as Exhibit 12, at ¶ 9, Exh. H. Accordingly, the Court may consider these publicly available documents at the motion to dismiss stage. *See, e.g., Watterson*, 987 F.2d at 3-4.

Corporation, recorded with the Registry on April 1, 2011 in Book 18726, Page 54, attached hereto as Exhibit 13; *see also* Exhibit 12, Affidavit in Support of Summary Judgment, at ¶10.

20.     On November 22, 2010, Aurora conducted a public auction of the Property, during which the Property was sold for $689,000.00.  *See* Exh.13.

21.     The Foreclosure Deed was signed by Francis J. Nolan of Harmon Law Offices, PC, as Attorney in Fact for Aurora.  *See* Exh. 13.  A Limited Power of Attorney granting Nolan the authority to "execute, acknowledge, to seal, to deliver and to revoke any documents necessary to the completion of a foreclosure, including, but not limited to making entry or authorizing others to make entry to foreclose, entering a bid, and executing a Memorandum of Sale, foreclosure deed and affidavit and any affidavits relative to title …" effective as of March 31, 2009, is recorded with the Registry in Book 17799, Page 325.

22.     On November 22, 2010, Harmon Law Offices, on behalf of Aurora, also made an open, peaceable and unopposed entry on the Property for the purpose of foreclosing the Mortgage.  A notarized Certificate of Entry was recorded with the Registry on April 1, 2011 in Book 18726, Page 52, attached hereto as Exhibit 14.

23.     The Land Records do not show any further assignment or sale of the Mortgage.[5]

**D.  The Summary Process Action**

24.     On May 2, 2011, Aurora filed a summary process action in Hampden County Housing Court against Thomas.  *See Aurora Loan Services, LLC v. Thomas J. LaCasse*, No. 11-SP-01661 (Mass. Housing Ct., Hampden Cty.) ("Summary Process Action").

25.     Attached to the Summary Process Complaint were two copies of a 72-hour Notice to Quit and Vacate Premises that Aurora, through its counsel, had served on April 12, 2011 at

---

[5]     The Court may take judicial notice of this fact, as the Land Records demonstrates that this fact is "not subject to reasonable dispute."  *See U.S. v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999); *see also* Fed. R. Evid. 201(b).

Thomas' two last-known addresses: (i) the subject Property, 270 Park Drive, Longmeadow, MA 01106; and (ii) 93 Crystal Street, Lenox Dale, MA 01242, copies of which are attached hereto as Exhibit 15.

26.     On May 9, 2011, Thomas filed an Answer to the Summary Process Complaint in which he alleged that MERS "cannot legally convey property," and noted that he "has before the Superior Court of Connecticut a pending case, in which the illegalities of Aurora and MERS' actions are being litigated." In support of his request to continue the summary process action, Thomas noted that the Housing Court should give a decision from the Connecticut Court "full faith and credit." *See* Summary Process Action, Answer, attached hereto as Exhibit 16, at ¶ 5-6.

27.     On May 16, 2011, the Summary Process Action was stayed pending a decision from the Connecticut Superior Court.

28.     As discussed below, when the Connecticut action was ultimately dismissed, Thomas then moved, on February 18, 2015, to file an Amended Answer and Counterclaim alleging, *inter alia*, that he did not receive a proper Notice to Quit, that the foreclosure sale was invalid, and that Aurora's actions were a violation of M.G.L. c. 93A. *See* Summary Process Action, Amended Answer of Thomas J. La Casse, attached hereto as Exhibit 17, at ¶¶ 1-8.

29.     In his Motion to Amend Counterclaims, Thomas, through his counsel Attorney Heal, acknowledged that the Connecticut case had "ended with a dismissal," and alleged that "in Connecticut jurisprudence, this is by default by [sic] without prejudice..." and alleged that "the Connecticut judge envisioned that the matter be refiled." *See* Summary Process Action, Motion to Amend Counterclaims, attached hereto as Exhibit 18, at ¶ 3.

30.     The Housing Court (Fields, J.) took no action on Thomas' Motion to Amend and, instead, involuntarily dismissed the case from its docket and transferred the Summary Process Action to the Superior Court so that it could be consolidated with the present action.[6]

**E.  The Connecticut Action.**

31.     While Thomas' bankruptcy was still active, and only approximately three weeks after the foreclosure sale, on December 8, 2010, Thomas filed an action in the Connecticut Superior Court alleging a host of claims sounding in tort based upon the alleged defects in the Assignment.  *See La Casse v. Aurora Loan Services, LLC et al.,* No. FST-cv10-660767 (Conn. Sup. Ct. Dist. Stamford) ("Connecticut Action"), Complaint, attached hereto as <u>Exhibit 19</u>.

32.     On December 17, 2012, Thomas was instructed by the Connecticut court to file an amended complaint based upon Massachusetts law.  *See id.*, Dkt. No. 120.00, Motion to Exempt Case from Docket Management, attached hereto as <u>Exhibit 20</u>, at ¶ 1.

33.     For two years thereafter, Thomas failed to advance the Connecticut Action and, on October 30, 2014, with the dormancy deadline approaching, Thomas, through local counsel, filed: (i) a Motion to Exempt Case from Docket Management seeking an exception from the four-year statutory dormancy period, and (ii) a Motion to Cite Additional Party, alleging that U.S. Bank, N.A., as Trustee was an "indispensable party" to the Connecticut Action.  *See id.*, Exh. 20, Affidavit of Attorney Heal, at ¶¶ 1-3, 5.  A hearing was scheduled for October 31, 2014.

34.     On the eve of the hearing, Thomas served a Request to Amend Complaint and a proposed Amended Complaint on Aurora.  The allegations in the proposed Amended Complaint are almost indistinguishable in both substance and syntax from the allegations advanced in the present action.  *See id.*, Dkt. No. 118.00, Amended Answer, attached hereto as <u>Exhibit 21</u>.

---

[6]     This action is now pending in the Superior Court in anticipation of a decision in the present action.

35.     At the hearing on October 31, 2014, the Court (Mintz, J.) questioned why the Connecticut Action had not been advanced since 2012 and noted that, to the extent U.S. Bank, N.A., as Trustee was truly an indispensable party, any attempt to cite them into the case would violate the statute of limitations.  *See* Exh. 12, at 3:7-20, 4:6-26, 7:22 – 8:24, 10:23-27.

36.     On January 23, 2015, the Connecticut Action was dismissed for failure to prosecute in accordance with Practice Book § 14-3, which requires a plaintiff to "prosecute actions with reasonable diligence."  *See* Judgment of Court, attached hereto as <u>Exhibit 22</u>.

37.     Less than one month later, on February 18, 2015, Plaintiffs, through Attorney Heal, filed the instant action in the Massachusetts Superior Court, No. HDCV2015-00097, which allegations are substantially similar to those pled, and not prosecuted, in the Connecticut Action.

38.     But for the reference to U.S. Bank, N.A., as Trustee as the "actual transferee of the loan in question," the Complaint does not contain any factual allegations as to U.S. Bank, N.A., as Trustee.  *See* Compl, at ¶¶ 13, 36.

### III.  <u>ARGUMENT</u>

### A.     <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual material . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "In conducting this review, [a court] disregard[s] 'statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.'" *Lemelson v. U.S. Bank N.A.*, 721 F.3d 18, 21 (1st Cir. 2013) (citations, internal quotation marks

and bracketing omitted); *see also Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir.

2011) (noting "threadbare or speculative" factual allegations may be disregarded where they fail

to cross "the line between the conclusory and the factual.").  "Dismissal for failure to state a

claim is appropriate 'if the complaint does not set forth factual allegations . . . respecting each

material element necessary to sustain recovery under some actionable legal theory.'"  *Id.*

(citations omitted).

## B.    PLAINTIFFS' CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA* WHERE THEY ALL WERE OR COULD HAVE BEEN ALLEGED IN THE <u>CONNECTICUT ACTION.</u>

The essential elements of *res judicata* of "(1) a final judgment on the merits in an earlier

action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of

action in both the earlier and later suits" are clearly met in the case-at-hand.  *Aunyx Corp. v.*

*Canon U.S.A., Inc*., 978 F.2d 3, 6 (1st Cir. 1992).

First, contrary to Plaintiffs' assertion that the Connecticut Action "was dismissed without

prejudice in January 2015, after the trial court judge determined that the case should be decided

by Massachusetts courts, as the locus is in Massachusetts and is intrinsically involved with

interpreting Massachusetts law," the Connecticut Court actually dismissed the Connecticut

Action for failure to prosecute pursuant to Connecticut Practice Book § 14-3.  *See* Exh. 22.  In

Connecticut, dismissal of an action for failure to prosecute acts as a Judgment on the Merits and

is a final judgment. *See* Connecticut Practice Book § 14-3; *see also Jenkins v. Ellis*, 169 Conn.

154, 160 (1975); *Gyurovsky v. Tramontano*, 2001 WL 835773, at *1 (Conn. Sup. Ct., July 2,

2001) ("Dismissal of a case from the court's docket under the dormancy program is a final

judgment").  Because this judgment acts as a final judgment on the merits, the doctrine of *res*

*judicata* precludes Plaintiffs from "relitigating issues which were raised or *could have been raised* in a previous action," in the present action. *Aunyx Corp.*, 978 F.2d at 6.[7]

Second, there is identity of parties where both Aurora and MERS are defendants in the present action and the previously-dismissed Connecticut Action, while Thomas was the plaintiff in both. The parties differ in the present action in that Thomas is now joined by his brother, Joseph, as a plaintiff, and US Bank, N.A., as Trustee, along with four John Does and Mortgage Contracting Services, Inc. have been listed as defendants. As the First Circuit has noted, when the parties "are nominally different[,] ... the question reduces to whether the [parties], though not identical, are sufficiently in privity to satisfy this element." *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 17 (1st Cir.2003).

As to the plaintiffs, the present action includes claims asserted by Joseph, allegedly as Thomas' tenant, for Aurora's purported improper post-foreclosure property preservation actions. These claims, however, are based on a challenge to the legality of the foreclosure proceedings, which arguments were already encompassed by Thomas' claims in the Connecticut Action. As the brothers both purportedly have similar interests in the same realty, their interests are sufficiently in privity to satisfy this element.

As to the defendants, while it is unclear specifically what causes of action are specifically being alleged against U.S. Bank, N.A., as Trustee, the four Doe defendants, or Mortgage Contracting Services, Inc., it is clear that all of the claims result from actions taken in connection with the foreclosure or the post-foreclosure property preservation activities. As to these activities, both Aurora and MERS previously vigorously defended the propriety of these actions in the Connecticut Action, such that the interests of the newly added parties were sufficiently

---

[7]      Indeed, Thomas had previously encouraged the Massachusetts Housing Court to abstain from reviewing Aurora's summary process action so that, when a final decision from the Connecticut Superior Court was available, the Housing Court could give the judgment its "full faith and credit." *See* Exh. 16.

represented.  *See Aunyx Corp.,* 978 F.2d at 4, 7 (finding party identicality of technically separate but related corporations when they shared a common interest).

The third element, identify of the causes of action, is also fulfilled.  While Plaintiffs' statement that the Connecticut Court urged Plaintiffs' to re-file their action in Massachusetts misrepresents the prior proceedings, the statement is curious in that it all but concedes that the present action involves claims that were raised or could have been raised in the Connecticut Action. *See* Compl., at ¶ 39.  Indeed, a plain review of the present Complaint, compared with the Connecticut Action's First Complaint and Amended Complaint, reveals that many of the claims are not just substantively identical, but also written utilizing the precise same language.  *See* Exhibit 23, attached hereto, which sets forth a comparison of the pleadings.

The fact that that "different legal theories are presented in each case does not mean that the same transaction is not behind each." *Manego v. Orleans Board of Trade,* 773 F.2d 1, 6 (1st Cir. 1985). "[S]o long as different theories of recovery, however prolific, derive from the same cause of action, the requisite identity is achieved if, and to the extent that, all such theories concern 'the same operative nucleus of fact.'" *Kale v. Combined Insurance Co. of America,* 924 F.2d 1161, 1166 (1st Cir. 1991).  Because, here, the "underlying facts" of both actions are related to the foreclosure and the post-foreclosure preservation activities and, thus, "grow out of the same transaction of series of connected transactions," the causes of action are identical for *res judicata* purposes.  *Id.*  Accordingly, where the present Complaint is but a regurgitation of the issues previously presented in the Connecticut Action, Plaintiffs' claims must be precluded on the grounds of *res judicata.*

**C.** **EVEN IF SUCH CLAIMS WERE NOT BARRED, PLAINTIFFS HAVE NO STANDING TO ASSERT THE CLAIMS WHERE THEY WOULD PROPERLY BELONG TO THE CHAPTER 7 TRUSTEE.**

Plaintiffs' Civil Cover Sheet alleges damages related to the purported "wrongful foreclosure" in the amount of $400,000.00 for "documented property damages" and "loss of profits" in the amount of $1.2 million.  *See* ECF No. 1, Exh. B.  The Complaint further alleges that Defendants owe Plaintiffs: (i) "not less than $100,000, and fair and reasonable attorneys' fees" for their purported "fraudulent and unlawful acts" related to Aurora's Assignment, *see* Compl., at ¶ 75, (ii) "at least $1.2 million" for "rob[bing Thomas" of his equity" in the Property and for "damaging his reputation [] in the community" as a result of noticing the foreclosure sale, *see id.,* at ¶¶ 79-81, (iii) "at least $400,735.00" for purportedly damaging the Property, *see id.,* at ¶¶ 94-97,  and (iv) "40,000.00" for Joseph's 'loss of use' of the Property, which use was "guaranteed by his lease," *see id.*, at ¶¶ 108 – 110.

Upon filing for bankruptcy protection, however, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate.  11 U.S.C. § 541(a)(1).  As pled, all of these purported claims either arose prior to or during the pendency of Thomas' Bankruptcy Action.[8]  Specifically, the Assignment was executed and recorded in 2009, *see* Compl., Exh. 2, the foreclosure occurred in 2010, *see* Exhs.

---

[8]      *See, e.g., Count I – Predatory Lending Practices / Breach of Contract: is based upon the "hopelessly flawed" Assignment; Count II – Breach of Contract: is based upon an allegation that MERS did not have authority to assign the Mortgage; Count III – Fraudulent Misrepresentation: is alleged on the grounds that MERS' assignment of the Mortgage was "deceptive" and that Aurora did not properly serve foreclosure notices; Count IV – Unconscionability: is alleged on the grounds that MERS did not have legal authority to assign the Mortgage; Count V – "Breach of the Implied Covenant of Good Faith and Fair Dealing": actually asserts violations of the FDCPA for MERS' and Aurora's purported "unfair and deceptive" practice in relying upon the "invalid" Assignment; Count VI – Damages to Thomas' Reputation in the Community: is alleged on the grounds that the issuance of the notice of foreclosure sale and complaint damaged his business reputation in the community; Count VII – Forcible Entry: is alleged on the grounds that defendants did not have a right to enter the Property; Count VIII – Breach of Contract: is alleged on the grounds that defendants have wrongfully entered the Property and their actions in securing it have damaged the Property; Count IX – Conversion: alleged on the grounds that defendants have unlawfully entered the Property and removed Joseph's personal belongings; Count XI – Loss of Use of Property: is alleged on the grounds that Joseph lost enjoyment to his lease to the Property by virtue of defendants' unlawful entry.*

13, 14, the property was purportedly secured in 2011, *see* Exh. 15, and Thomas had already filed

the Connecticut Action seeking monetary damages stemming from these actions in 2011, *see*

Exh. 19; yet, the Bankruptcy Action was not discharged until 2012.  *See* Bankruptcy Action,

ECF No. 271.  Because any claims arising from the Defendants' actions existed prior to and

during the pendency of Thomas' Bankruptcy Action, Plaintiffs do not have standing to assert

these claims, as they should have become property of the Estate.  *See* 11 U.S.C. § 541(a)(1); *see*

*also Brooks v. Beatty*, 25 F.3d 1037, at *3 (1st Cir. 1994) (finding debtor did not have standing

to prosecute action where cause of action against company not previously disclosed in

bankruptcy schedules); *see also Augustin v. Danvers Bank*,  486 F. Supp. 2d 99, 103 (D. Mass.

2007) (dismissing consumer protection claims where predicate actions were rooted in pre-

bankruptcy past and, thus, belonged to estate).  And because none of these monetary claims were

scheduled or disclosed as assets in the Chapter 7 proceeding, *see* Exh. 2, these claims were never

abandoned by the Trustee, *see* 11 U.S.C. § 554(c)-(d), and remain property of the Estate.  *See*

*Jeffrey v. Desmond,* 70 F.3d 183, 186 n. 3 (1st Cir. 1995) ("[B]y operation of 11 U.S.C. § 554(c)

and (d), any asset not properly scheduled remains property of the bankrupt estate, and the debtor

loses all rights to enforce it in his own name."); *United States v. Grant,* 971 F.2d 799, 803 n. 4

(1st Cir. 1992) (*en banc* ) (holding that abandonment by trustee "does not relinquish an

*undisclosed* interest in property") (emphasis in original).  Accordingly, where these claims were

not disclosed, Plaintiffs do not have standing to prosecute the present action.

**D.     PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF
         LIMITATIONS.**

Even if Plaintiffs had standing to bring this action - which they do not - and even if

Plaintiffs' claims were not barred by the doctrine of *res judicata* - which they are - the claims are

further barred by M.G.L. c. 244 §§ 1,2, the foreclosure by entry statute, as well as the various applicable statutes of limitations.

### A.  Foreclosure By Entry

Foreclosure by entry is accomplished when a mortgagee makes an open and peaceable entry onto land, records a certificate of entry signed by two witnesses, and a mortgagor fails to oppose this possession within three years.  *See* M.G.L. c. 244 §§ 1, 2.  In the event these actions occur, a mortgagor is forever foreclosed from exercising the right of redemption.  *See* M.G.L. c. 244 § 1.  For purposes of this statute, it is not necessary for a mortgagee to maintain actual, physical possession of the property claimed and "literally oust and expel the mortgagor"; rather, the entry is formal and intended to provide constructive notice to the mortgagor "that his right of redeeming will be gone in three years."  *Fletcher v. Cary*, 103 Mass. 475, 477 (1870); *see also Swift v. Mendell,* (1851) 62 Mass. 359, 8 Cush. 357, 359) ("It is of no importance that [the entry] produces no change in the occupation"); *Joyner v. Lenox Sav. Bank*, 322 Mass. 46, 55 (1947).

Here, on April 1, 2011, Aurora recorded a Certificate of Entry, executed by two witnesses, which affirmed that on November 22, 2010, Harmon Law Offices, on behalf of Aurora, made an open, peaceable and unopposed entry on the Property for the purpose of foreclosing the Mortgage.  *See* Exh. 14.  In addition, Plaintiffs allege that Aurora commenced making certain repairs and preservation efforts to the Property to avoid waste, including changing the locks.  *See*  Compl., at ¶¶ 83, 87-94, 103, 108.  Taken in conjunction with the various claims asserted in the Connecticut Action, there can be no doubt that Thomas was well aware that his right to redeem the Property may be foreclosed.  Yet, despite the fact that Aurora recorded the Certificate of Entry in April 2011, Thomas did not file the present lawsuit until

February 2015 – almost four years after the recordation date.  Accordingly, Thomas has waived

any challenge he could have brought to the propriety of the foreclosure.

### B.  Plaintiffs' Claims Are Barred By The Applicable Statutes of Limitations

Notwithstanding the fact that the foreclosure by entry is final and Plaintiffs' claims

pertaining to the legality of the foreclosure are thereby precluded, the majority of Plaintiffs'

claims are also barred by their applicable statute of limitations.

For example, Count I (Predatory Lending[9]), III (Fraudulent Misrepresentation),

IV (Unconscionability[10]), VI (Damages to Reputation[11]), VII (Forcible Entry), X (Conversion),

and XI (Loss of Use of Property[12]) all purportedly set forth tort claims with a statute of

limitations of three years.  *See* M.G.L. c. 260 §2A.   Each of these counts are predicated on one or

more of the following three issues, the most recent of which still occurred more than three years

ago: (i) the 2009 assignment of the Mortgage from MERS to Aurora; (ii) Aurora's 2010

foreclosure action; or (iii) Aurora's alleged post-foreclosure property preservation actions.  In

point of fact, when asked by the Connecticut Superior Court whether Thomas' claims would fail

if his motion to cite was denied, Plaintiff conceded that his claims against the new party were

outside the statute of limitations.  *See* Exh. 12, at 7:22 – 8:19 (admonishing counsel not to bring

claims that are frivolous on their face where outside statute of limitations).

Further, Count V, which is mis-styled as a claim for "breach of the implied covenant of

good faith and fair dealing," asserts violations of the Fair Debt Collection Practices Act, 15

U.S.C. §§ 1692e and 1692f, which are subject to a one year statute of limitation from the "date

---

[9]     While Massachusetts does have a Predatory Home Loan Practices Act, M.G.L. c. 183C § 1 *et seq.*, it does not appear that this claim is being brought in conjunction with this Act.  Accordingly, Defendants  assume, for the moment, that this count alleges a general tort claim
[10]     Defendants assume, for the moment, that such a cause of action exists.
[11]     Defendants assume, for the moment, that such a cause of action exists.
[12]     Defendants assume, for the moment, that such a cause of action exists.

on which the violation occurred." *See* 15 U.S.C. §1692k(d).  While the Complaint only vaguely alleges these violations, it appears that the purported "false and misleading representations" and "unfair practices" alleged are based on Aurora's "furthering a working fraud and conspiracy of [MERS] to assign and sell a Mortgage and Note it was not a party to…. [Because] Aurora knew, and/or should have known that the Assignment was invalid…."  Compl., at ¶ 73.  Again, where the Assignment and Foreclosure occurred more than five years ago, this count is untimely.

Plaintiffs further allege a violation of Massachusetts General Law Chapter 93A § 11, which claim must be commenced within four years of the cause of action accruing.  M.G.L. c. 260 § 5A.  Count IX is only cursorily pled and relies upon incorporating Thomas' prior allegations, *see* Compl., at ¶ 98-99, and, therefore, this count fails for the same reason as the others: the most recent actions complained-of occurred more than four years ago.

**E.    EVEN IF NOT BARRED, ALL OF PLAINTIFFS' CLAIMS LACK SUBSTANTIVE MERIT.**

1.    Massachusetts Courts Have Consistently Affirmed MERS' Authority To Assign Mortgages.

First, it appears that all of the claims alleged arise out of the erroneous assertion that MERS, as a nominee mortgage, does not have the power to assign mortgages.  Several years ago, this argument was the foreclosure defense argument *du jour*, which subsequently provided the courts, including the First Circuit, ample opportunity to repudiate its legitimacy.  *See, e.g., Culhane,* 708 F. 3d 282, 291-93 (1st Cir. 2013) ("MERS's role as mortgagee of record and custodian of the bare legal interest as nominee for the member-noteholder, and the member-noteholder's role as owner of the beneficial interest in the loan, fit comfortably with each other and fit comfortably within the structure of Massachusetts mortgage law."); *Mills v. U.S. Bank, NA,* 753 F.3d 47, 53 (1st Cir. 2014) ("*Culhane* makes clear that MERS validly serves both as the

holder of 'bare legal title as mortgagee of record' and as 'nominee for the member-noteholder');

*Wilson v. HSBC Mortgage Servs., Inc,* 744 F.3d 1, 11 (1st Cir. 2014) (upholding MERS system).

Today, the state of the law in Massachusetts is "unequivocal" that "MERS may validly possess

and assign a legal interest in a mortgage." *Serra v. Quantum Servicing, Corp.,* 2014 WL

1280260, at *2 (1st Cir. Mar. 31, 2014); *see also In re Marron*, 455 B.R. 1, 5 (Bankr. D.Mass.

2011) (MERS generally has the right to "assign mortgages held in its name.").

     In fact, "MERS has authority to assign [a] Mortgage, with or without the demonstration

of its principal's assent." *Abate v. Freemont Inv. & Loan,* 2012 WL 6115613 at *8 (Mass. Land

Ct. Dec. 10, 2012).   Further, "under Massachusetts law, an assignment of a mortgage is effective

without the need to independently establish the authority of the assignor to make the

assignment." *In re Marron*, 455 B.R. at 8 (citing *Aliberti v. GMAC Mortg., LLC*, 779 F.Supp.2d

242, 249 (D.Mass. 2011)).

     Moreover, the plain terms of Thomas' Mortgage authorize MERS to act as an agent for

the note holder and therefore grants MERS the ability to assign the mortgage at the request of the

note holder, i.e. Homecomings Financial, LLC and its successors and assigns. *See* Compl., Exh.

3, at p. 3 ("Borrower does hereby *mortgage, grant and convey to MERS* (solely as nominee for

Lender and Lender's successors and assigns) *... and to the successors and assigns of MERS,* with

power of sale, the [plaintiff's property].") (emphasis added).  Here, as of November 15, 2006,

MERS was the mortgagee holding legal title of the mortgage until the Mortgage was assigned to

Aurora on July 31, 2009.  What is more, by agreeing to the terms of the Mortgage, <u>Thomas</u> gave

MERS, serving as nominee, the right to exercise any and all interests granted to Homecomings

Financial, LLC and its successors and assigns. Therefore, by the terms of the Mortgage, "MERS

was acting on behalf of the lender's assignee in executing the Assignment and was within its

authority to do so as nominee for the lender." *Abate*, 2012 WL 6115613, at *8. Accordingly, these challenges must fail, as MERS had both the legal and contractual authority to assign the Mortgage, and Plaintiffs' attempts to assert otherwise are unavailing.

To the extent this allegation is the pillar of Counts I, II, IV, V, VII – IX, these claims must be dismissed.

2. The Remainder of Thomas' Claims Are Similarly Deficient.

a. *Counts I and II Fail to Set Forth A Claim*

Count I purports to set forth a cause of action for "predatory lending practices," but, despite using this term of art, the count actually does not attempt to bring a cause of action under the Massachusetts Predatory Home Loan Practices Act, M.G.L. c. 183C § 1, *et seq*., nor do Plaintiffs assert any allegations that, even if true, would pertain to the Defendants' "lending practices." Instead, it appears that Count I is but a factual supplement to Count II -Breach of Contract[13] - and, thus, both Counts will be discussed together.

As a general matter, the majority of the allegations set forth in these Counts fail for the reasons set forth, above, concerning MERS' authority to assign mortgages. Moreover, Plaintiffs' allegations that MERS was "unlawfully joined" to the Mortgage and that MERS was "never a … party to the" Mortgage, *see* Compl., at ¶¶ 49-50, are disproven by the plain terms of the Mortgage, which conspicuously discloses MERS' involvement and specifically gives MERS the power to take necessary actions to, *inter alia*, enforce the power of sale. *See supra*, at E.1.

---

[13] Although styled as a breach of contract claim, Plaintiffs fail to identify a single provision of the Mortgage that was breached by Defendants. "To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, (1) that there was a valid contract, (2) that the defendant breached its duties under the contractual agreement, and (3) that the breach caused the plaintiff damage." *Calden v. Arnold Worldwide LLC*, 2012 WL 5964576, at *6 (D. Mass. Nov. 27, 2012). A plaintiff must also allege that he or she is "ready, willing and able to perform under the contract at issue. *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996). "Failure to plead any of the elements of a breach of contract claim warrants dismissal of the claim." *Calden*, 2012 WL 5964576, at *6. The Complaint fails to satisfy these requirements.

As to any allegation that the Assignment was "hopelessly flawed" on the basis of some purported discrepancies in MERS' listed address or the failure to reference "MERS" rather than "Mortgage Electronic Registration Systems, Inc.", *see* Compl., at ¶ 40, Plaintiffs lack standing to challenge these alleged variances where such an error would merely render the assignment voidable, not void.  *See Wilson v. HSBC Mtg. Serv., Inc.,* 744 F. 3d 1 (1st Cir. 2014).  "By contrast, 'a [Massachusetts] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.'"  *Id.*

As the Court expressly held in *Wilson*, the sorts of challenges Plaintiffs levy here against the Assignment are not those that a borrower has standing to raise, particularly where "the four corners of the document show in no uncertain terms" the Assignment's compliance with M.G.L. c. 183 § 54B.[14]  *Id.*; *see also Butler v. Deutsche Bank Trust Co. Ams.,* 2012 WL 3518560, at *2 (D. Mass. Aug. 14, 2012), *aff'd Butler v. Deutsche Bank Trust Co. Ams.,* 748 F.3d 28 (1st Cir. 2014) (mortgagor does not have standing to challenge foreclosure "on the basis of just any potentially invalidating deficiency in an assignment").

And, even if Plaintiffs' did have standing, which they do not, the errors asserted by Plaintiffs would not void the Assignment.  As Plaintiffs' counsel was informed in *In re Carlson*, while M.G.L. c. 183 § 6C requires an assignment to contain the address of the "mortgagee or assignee," no such requirement exists as to the assignor (although MERS did list its address in the Assignment) and, even in the absence of any addresses, an assignment would still be valid.

---

[14]    G.L. c. 183 § 54B makes explicit that: " a[n] assignment of mortgage . . . if executed before a notary public . . . whether executed within or without the commonwealth, by a person purporting to hold the position of . . . vice president . . . including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity . . . shall be binding upon such entity and shall be entitled to be recorded . . . ."  When a mortgage assignment "clearly shows that [the signatory] signed it on behalf of [the assignor] as its vice president [and] executed it in the presence of a notary," it cannot be challenged, pursuant to this statute.  *Id.* "Section 54B is 'unambiguous . . . .'" *Wilson*, 744 F. 3d 1.

*See id.*, 2011 WL 3420436, at *5 (Bankr. D. Mass. 2011). Plaintiffs' other allegation concerning the discrepancy in the MERS' title is specious and particularly peculiar, as the Assignment quite plainly states that the Assignor is "Mortgage Electronic Registration Systems, Inc.," *see* Compl., Exh. 2, which name is also defined in the Mortgage. *See* Compl., Exh. 3, at (C) ("MERS" is Mortgage Electronic Registration Systems, Inc."). This claim is, therefore, baseless.

### b. Count III Fails to Set Forth A Claim

Count III purports to allege a cause of action for fraudulent misrepresentation; however, Fed. R. Civ. P. 9(b) provides that "in alleging fraud … a party must state with particularity the circumstances constituting fraud or mistake." As the Supreme Judicial Court has stated in *Friedman v. Jablonski*, this settled pleading requirement mandates "adequate allegations of the circumstances constituting the fraud," namely a need to "allege[] the misrepresentation specifically" or "who made the statements, their falsity, and the defendants' knowledge of their falsity" in addition to "to whom the statements were made, the period during which they were made, that they were made to induce the plaintiffs' reliance, and that the plaintiffs did rely to their harm." 371 Mass. 482, 488 (1976). The Complaint fails to satisfy this heightened standard.

Plaintiffs' allege three different theories of fraud – fraud in the inducement, mail fraud, and concealment - none of which are availing. First, Plaintiffs' "fraud in the inducement" and "concealment" theories are cognitively dissonant, as the "inducement claim" alleges that Thomas was somehow induced into executing the Mortgage by the fact that MERS was included as a nominee for the lender; yet, seven paragraphs later, Plaintiffs allege that MERS failed to disclose its role in the Mortgage. *Compare* Compl., at ¶¶55-56 *with* Compl., at ¶¶ 61-62.

Aside from the inconsistency, Plaintiffs' allegations of "fraud" fail where there is no particularized identification of deceit, inducement, reliance, the specific parties involved, or the

harm caused.  *Friedman,* 371 Mass. at 488.  More to the point, however, even if sufficiently pled, this Count would also fail where the primary documents rebutting all of Plaintiffs' allegations have previously been introduced into the record.  For example, Plaintiffs' allegation concerning the purported "concealment" of MERS' authority and role in the Mortgage contract is directly disproven by the terms of the Mortgage.  *See* Compl., at Exh. 3.  Moreover, Plaintiffs' absurd allegation of mail fraud, which is curiously based both on Aurora's purported failure to send various foreclosure notices to Thomas' Connecticut address <u>and</u> Aurora's sending of "fallacious and fraudulent legal papers," is belied by the documents that were submitted in the Summary Process Action, the Connecticut Action, and the Bankruptcy Action – all of which provided him notice of the impending foreclosure.  *See* Exhs. 7, 11, 13.  These documents demonstrate that Aurora satisfied the notice requirement articulated in M.G.L. c. 244 § 14.[15]  Moreover, as demonstrated by the various addresses to which these notices were sent, Aurora, through its counsel, made great efforts to notify Plaintiffs (and Plaintiffs' counsel), which efforts not only satisfy the notice requirement of M.G.L. c. 244 § 14, but also negate any showing of fraudulent intent on Aurora's use of the mail.  Therefore, this Count fails.

c.   <u>Count IV Fails to Set Forth A Claim</u>

Count IV purports to set forth a cause of action for "unconscionability." Unconscionability, however, is an affirmative defense, generally to the enforcement of a contract, and is not a stand-alone cause of action.  *See, e.g.,  Li'l Peach of Massachusetts, Inc. v. Prendergast*, 1996 WL 1251389, at *2 (Mass. Super. Aug. 15, 1996) ("the counterclaim for unconscionable contract does not state a claim").  Even if such a cause of action existed, where

---

[15]      G.L. c. 24 4 § 14 provides that "no sale under such power shall be effectual to foreclose a mortgage, unless previous to such sale," advance notices of the foreclosure sale has been provided to the mortgageor, to other interested parties, and by publication in a newspaper published in the town where the mortgaged land lies or of general circulation in that town.  *Id*

this claim is premised on MERS' purported "misrepresentation of its authority … to foreclose and/or sell" the Property, and it has been demonstrated that MERS had this authority, both in law and in contract, this claim must be dismissed.

### d.  Count V Fails to Set Forth A Claim

Count V purports to set forth a cause of action for "breach of the implied covenant of good faith and fair dealing;" however, the claim makes no reference to an underlying contract and, instead, appears to assert violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and f ("FDCPA").  By Thomas' own pleading, he is not entitled to the protections of the FDCPA.  According to Plaintiffs' Complaint, the property located at 270 Park Ave was utilized at all times a "business" and, accordingly, the FDCPA does not apply as the "debt" being collected was not "primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5); *see* Compl., at ¶ 100 (alleging violation of M.G.L. c. 93A § 11).

### e.  Count VI Fails to Set Forth A Claim

Count VI purports to set forth a cause of action for "damages to Thomas' Reputation in the Community"; however, Massachusetts does not recognize the recovery of consequential damages for injury to reputation in contract actions.  *See McCone v. New England Tel. & Tel Co.*, 393 Mass. 231, 234 n. 8 (1984); *see also Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, at 891-93 (1st Cir. 1988) (noting that such damages are speculative and not contemplated by parties).  And, even assuming the this count could be advanced on other grounds, in those few cases that have found damages related to negligence or defamation claims, the Massachusetts courts "at a minimum, [] require particular evidence of specific lost job opportunities before they … allow reputation damages."  *Jorgensen v. Mass. Port Auth.,* 905 F.2d 515, 526 (1st Cir.1990).  Thomas, however, has utterly failed to proffer any evidence of any

actual loss that resulted from Aurora's publication of the foreclosure notice or foreclosure Complaint. *See* Compl., at ¶¶ 77, 80. Indeed, a quick review of Thomas' Voluntary Petition from his Bankruptcy Action undercuts the plausibility of this count where Thomas disclosed that his sole source of income, in the amount of $2,030 / month, was being supplied by his brother. *See* Exh. 2, at Schedule I. To the extent Thomas was "prevented" from purchasing properties during the time in which Aurora noticed the foreclosure sale, such "prevention" was assuredly more connected to his lack of income and employment than to any foreclosure publication. This claim lacks any merit and must be dismissed.

      f.   Count VII Fails to Set Forth A Claim

Count VII purports to set forth a cause of action for "forcible entry," pursuant to M.G.L. c. 184 § 18, for Defendants' alleged "taking" of the Property. *See* Compl., at ¶ 83. M.G.L. c. 184 § 18, states that "no person shall make an entry into land … *except in cases where his entry is allowed by law,* and in such cases he shall not enter by force, but in a peaceable manner." In other words, the statute contains an express carve-out for recovery of possession of land "through proceedings authorized by law." *Id.* Therefore, where, as here, Aurora was permitted to enter the Property, pursuant to M.G.L. c. 244 §§ 1, 2, in order to make peaceable entry to foreclose and was further allowed by court order to foreclose on the Property, *see* Exh. 10, no such "forcible entry" has occurred and this claim must be dismissed.

      g.   Count VIII Fails to Set Forth A Claim[16]

Count IX purports to set forth a cause of action for breach of contract based upon paragraph 9 of the Mortgage, which is titled "Protection of Lender's Interest in the Rights Under

---

[16] This cause of action, which is not pled in the alternative, is also logically incongruous as the entirety of Plaintiffs' claims have rested on the theory that because MERS, allegedly, cannot assign a Mortgage, its attempt to do so was invalid and ineffective as to Aurora. And yet, here, Plaintiffs assert a breach of contract action against "Defendants" for their purported breach—of a contract to which they allege the Defendants are not a party.

this Security Instrument." *See* Compl., ¶87; *see also* Compl., Exh. B.  Although Thomas alleges

that "Defendants" do not have a right to enter the Property, the quoted contractual language

explicitly notes that the Lender may "secur[e] and/or repair[]" the Property" if the Property is

abandoned.  It is undisputed that the Property is not and was not Plaintiff's primary residence.

*See* Compl., ¶¶ 9, 59.  Accordingly, any purported actions taken by "Defendants" to secure the

Property would not have the effect of "evicting" Thomas.  More to the point, however, to the

extent "Defendants" performed any preservation actions, Plaintiff has failed to plead: (i) what

precise actions were taken; (ii) by whom; (iii) how these purported actions breach any

contractual provisions; and (iv) what harm resulted.  Such "threadbare" and "bald" factual

allegations are insufficient to avoid dismissal.  *Iqbal*, 556 U.S. at 681.

h.  <u>Count IX Fails to Set Forth A Claim</u>

Count IX cursorily alleges that "the unfair and deceptive acts of Defendants as detailed

above are unfair business practices" as defined by Mass. G.L. c. 93A § 11.  Compl., at ¶ 99-100.

In order to be actionable under Chapter 93A, conduct must be "'within … the penumbra of some

common-law, statutory, or other established concept of unfairness; … is immoral, unethical,

oppressive, or unscrupulous; [and] … causes substantial injury….'" *Linkage Corp. v. Trustees*

*of Boston Univ.*, 425 Mass. 1, 27 (1997).  Thomas does not attempt to demonstrate the precise

"unfair methods or competition ... or act or practice" of which he complains, choosing instead to

merely incorporate the prior paragraphs.  Accordingly, where Plaintiffs' earlier allegations have

been disproven, they cannot serve as a predicate for a Chapter 93A claim.  Moreover, Thomas'

claim for damages is unsupported where his own conduct, i.e., his longstanding delinquency on

his mortgage payments, is the basis for his injuries.  *See, e.g., Sankey v. Aurora Loan Servs.,*

*LLC,* 757 F.Supp.2d 57, 57-59 (D. Mass. Nov. 4, 2010).  Accordingly, where Thomas has failed

to produce any facts which show that the conduct of any of the defendants is sufficiently objectionable to "attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce," Thomas' claim under Chapter 93A must be dismissed. *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498 (1979).

3. Joseph LaCasse's Claims (Counts X and XI) Fail Where He Has No Standing To Challenge The Foreclosure Action And The Foreclosure Was Otherwise Valid.

Joseph alleges two Counts against Defendants, one for "conversion" and one for "loss of use of property."  Implicit in both of these Counts are assumptions that: (a) Joseph had a lawful right to the Property and, thus, has standing to assert these challenges; (b) Aurora did not have a lawful right to the Property and intentionally interfered with Joseph's property rights.  Yet, at no point does Joseph allege that Defendants "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which they had no right of possession at the time," a necessary element of a claim of conversion.  *In re Brauer*, 452 Mass. 56, 57 (2008).[17]  Nor could Joseph allege such claims where, as discussed above, Aurora, as the assignee of the Mortgage, was granted leave by both the Bankruptcy Court and the Land Court to foreclose on the Property, *see* Exhs. 8, 10, and, in November 2010, Aurora conducted both a valid foreclosure by entry and valid foreclosure sale on the Property.

In contrast, while Aurora can demonstrate its ownership interest in the Property, the Complaint fails to provide any support for Joseph's possessory interest in : (i) the purportedly "dispossessed items" that were stored in Thomas' former property, or (ii) a lease-hold interest in the Property.  Prior pleadings presented to the bankruptcy court, including an executed affidavit

---

[17]     A plaintiff alleging conversion under Massachusetts law must show that: "(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property[;] (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused."  *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).

from Joseph, himself, establish that immediately prior to and immediately after the November 22, 2010 foreclosure sale Joseph's residence was 133 Colony Road, Longmeadow, Massachusetts.  *See* Exh. 6.  Moreover, to the extent Joseph had a lease to the Property, no such lease was ever disclosed to the Bankruptcy Court.  *See* Exh. 2.  Accordingly, the record demonstrates that Joseph was not a tenant as of the foreclosure.  *See, e.g.,* M.G.L. c. 186A, § 1. To the extent Joseph executed a lease post-foreclosure, any liability stemming therefrom would rest, not with "Defendants," but with Thomas for leasing a property that he did not own.

Additionally, the Complaint is barren of specifics regarding these claims, including basic details, such as what items were removed; the terms of any purported lease; what steps, if any, Joseph took to demand the return of the purportedly "removed items"; and how such damages were incurred (did Joseph continue to pay his brother rent?).  As with Thomas' claims, even if Joseph's allegations had any legal merit – which they do not - the counts are pled with such little specificity that they fail to meet the minimal pleading standards

For all of the foregoing reasons, Defendants' motion should be granted, all of Plaintiffs' claims as to Aurora, U.S. Bank, N.A., as Trustee, and MERS should be dismissed with prejudice, and Plaintiffs should reimburse Defendants for their attorneys' fees and costs incurred in preparing this Motion.

[Remainder of Page Intentionally Left Blank]

Respectfully Submitted,

AURORA LOAN SERVICES, LLC, U.S.
BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE LEHMAN XS TRUST,
SERIES 2007-2N, AND MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.,
By their attorneys,

_/s/ Alison M. Kinchla_
James B. Fox, Esq. BBO No. 176520
Meredith A. Swisher, Esq. BBO No. 646866
Alison M. Kinchla, Esq. BBO No. 676379
BERNKOPF GOODMAN LLP
Two Seaport Lane, 9th Floor
Boston, MA  02210
Tel: (617) 790-3000
Fax: (617) 790-3300
jfox@bg-llp.com
mswisher@bg-llp.com
akinchla@bg-llp.com

Dated:  May 29, 2015

## CERTIFICATION PURSUANT TO L.R. 7.1

I hereby certify that on May 14, 2015, I sent correspondence to Plaintiffs' counsel, Laird
Heal, Esq., via email and first class mail, which correspondence attempted to resolve the subject
of this Motion, but to which no response was received.  Efforts to resolve the issues during a
telephone conversation with Plaintiffs' counsel on May 20, 2015, were similarly ineffectual.
Despite attempts to confer in good faith, the parties were not able to resolve or narrow the scope
of this dispute.

_/s/ Alison M. Kinchla_
Alison M. Kinchla, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that this **Memorandum of Law in Support of Defendants' Motion to
Dismiss** filed through the ECF system will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as
non-registered participants on May 29, 2015.

_/s/ Alison M. Kinchla_
Alison M. Kinchla, Esq.

635983 v2/38755/186