UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS J. LA CASSE, and JOSEPH LA CASSE, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| AURORA LOAN SERVICES, LLC; U.S. BANK, NATIONAL ASSOCIATION, as Trustee for the Lehman XS Trust, Series 2007-2N; JOHN DOES 1–4; MORTGAGE CONTRACTING SERVICE, INC.; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | * * * * * * * * * | Civil Action No. 15-11672-MGM |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM
(Dkt. No. 11 and 24)

August 30, 2016

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Thomas J. La Casse and Joseph La Casse ("Plaintiffs") originally brought this action in state court against: Aurora Loan Services, LLC ("Aurora"); U.S. Bank, National Association, as Trustee for the Lehman XS Trust, Series 2007-2N ("US Bank"); Mortgage Contracting Services ("MCS"); unknown MCS's employees listed as John Does 1 through 4[1]; and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"). On April 22, 2015, Defendants removed the

---

[1] Generally, a claim against a fictitious defendant is only permissible where the name of the party is "not known at the time the complaint is filed," but "may be learned through the discovery process." *Kemper Ins. Cos. Inc. v. Federal Ex. Corp.*, 115 F. Supp. 2d 116, 125 (D. Mass. 2000) (citing *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)). While Plaintiffs only explicitly refer to the John Does when naming the parties, (Dkt. No. 10, Compl. ¶¶ 16–20), they alleged Counts 7 through 10 against "All Defendants" or "Defendants" in general, which would include the John Does. (*Id.* at 20, 23.)

action to this court pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. The case arises out of Aurora's foreclosure in 2010 of Thomas's property, to which Joseph held a leasehold interest.

Plaintiffs assert eleven counts pleading various state-law and federal claims. The counts are captioned as follows: Predatory Lending Practices - Breach of Contract (Count 1); Breach of Contract (Count 2); Fraudulent Misrepresentation (Count 3); Unconscionability (Count 4); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 5); Damages to Thomas's Reputation in the Community (Count 6); Forcible Entry (Count 7); Breach of Contract (Count 8); Violation of Consumer Protection Statute Mass. G. L. c. 93A § 11 (Count 9); Conversion (Count 10); and Loss of Use of Property (Count 11). Plaintiffs seek monetary damages, an injunction, and a declaratory judgment that would return them to their property.

Presently before the court are motions to dismiss filed by all Defendants. (Dkt. Nos. 11 and 24.) For the reasons discussed below, the court will allow Defendants' motions to dismiss.

## II. STANDARD OF REVIEW

When confronted with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the well-pleaded allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See S.E.C. v. Tambone,* 597 F.3d 436, 441 (1st Cir. 2010). A complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. BACKGROUND

The following facts come directly from Plaintiffs' complaint, exhibits attached thereto, and official public records. *See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

A. <u>Plaintiffs' Mortgage and Foreclosure</u>

On November 15, 2006, "Thomas purchased a residential home at 270 Park Avenue, Longmeadow, Massachusetts," financing the purchase through a $600,000 "loan transaction with Homecomings Financial, LLC." (Dkt. No. 10, Compl. ¶¶ 25–26.) He secured the loan with a mortgage on the purchased property, with MERS designated as the mortgagee. (*Id.* ¶ 29.) According to the mortgage, "MERS is organized and existing under the laws of Delaware, and has an address . . . of P.O. Box 2026, Flint, MI 48501." (*Id.,* Ex. 3 at 1.)

On July 31, 2009, MERS assigned the mortgage to Aurora, located at 2617 College Park, Scottsbluff, Nebraska. (*Id.* ¶ 32; Ex. 2.) The assignment lists MERS as located at "3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474," and it was signed by Vice President Theodore Schultz before Notary Public JoAnn Rein. (*Id.*) This assignment was recorded in the Hampden County Registry of Deeds ("Registry"), Book 17990, page 528.

In October and November of 2010, Aurora published notice of the foreclosure sale in The Republican. (Compl. ¶ 77; Ex. 1 at 3, 5.) On November 17, 2010, the Massachusetts Land Court issued a judgment authorizing Aurora, in compliance with the Servicemembers Civil Relief Act, 50 U.S.C. §§ 501 et seq., to foreclose upon the property in accordance with the statutory power of sale in the mortgage. (Dkt. No. 12, Defs.' Mem., Ex. 10.)

On November 22, 2010, Aurora sold itself the property at a foreclosure sale for $689,000.00 and thereafter recorded the deed in the Registry, Book 18726, page 54. (*Id.* ¶¶ 38–39; Ex. 1) Aurora also recorded a certificate of entry on April 1, 2011 in the Registry, Book 18726, page 52, stating that Bonnie Baer-Green, "attorney-in-fact and agent of Aurora," "made an open, peaceable, and unopposed entry onto the premises" on November 22, 2010.[2] (Defs.' Mem., Ex. 14.) On May 2,

---

[2] A certificate or
    writ of entry documents a peaceable entrance onto the property, following a default, and a declaration
    that entry is being made for the purpose of foreclosing on a mortgage in accordance with [Mass. Gen.

2011, Aurora filed a summary process action in Hampden County Housing Court against Thomas. (Dkt. No. 22, Pls.' Mem., Ex. A.)

B. Thomas's Bankruptcy

On January 19, 2010, Thomas filed a voluntary petition for Chapter 11 bankruptcy, which was converted into a Chapter 7 proceeding upon the trustee's motion on June 21, 2010. (*In re Thomas James LaCasse* ("*In re LaCasse*"), Case No. 10-30088-HJB, Dkt. Nos. 1, 54, 64.) In an Amended Schedule B, Thomas listed as an asset "[t]ruth in lending, mortgage, foreclosure, and related violations, and any other violations, concerning validity and extent of mortgage(s) on 270 Park Drive, Longmeadow, MA." (*Id.*, Dkt. Nos. 244, 247.) These assets thereafter were abandoned by the estate pursuant to 11 U.S.C. § 554(c). (*Id.*, Dkt. No. 264.) The Bankruptcy Court discharged Thomas's Chapter 7 case on May 22, 2012. (*Id.*, Dkt. No. 271.)

C. Plaintiffs' Connecticut Action

Plaintiffs filed a complaint with the Connecticut Superior Court of Stamford/Norwalk on December 8, 2010. (Defs.' Mem., Ex. 19 at 2.) In the Connecticut action, Plaintiffs sought recovery for five counts: predatory lending practices, breach of contract, fraud, unconscionability, and violation of the Fair Debt Collection Practices Act. (*Id.*, Ex. 19 at 5–12.) On January 23, 2015, the Connecticut Action was "dismissed for failure to prosecute in accordance with [Connecticut] Practice Book § 14-3." (*Id.*, Ex. 22.)

D. Present Action

Plaintiffs filed the present action in the Massachusetts Superior Court on February 18, 2015. (Dkt. No. 10.) Plaintiffs admit the present action is "almost indistinguishable in both substance and

---

Law] ch. 244, §§ 1, 2, *i.e.*, initiating a foreclosure by entry. In addition to foreclosing by way of the statutory power of sale, mortgagees often also attempt to foreclosure by entry, which requires three years of uninterrupted, peaceable possession.

*PHH Mortgage Corp. v. Lanou*, 2015 WL 162911, at *1 n. 1 (D. Mass. Jan. 13, 2015)

4

syntax from the allegations" advanced in a proposed Amended Complaint to the Connecticut action. (Defs.' Mem. at 11; Pl.'s Mem. at 6; Ex. 21.) The Massachusetts Superior Court action was consolidated with the summary process action for "hearing purposes only." (Dkt. No. 10 at 5.) Thereafter, Defendants removed the Massachusetts Superior Court action to this court and filed the motion to dismiss presently at issue.

## IV. DISCUSSION

Defendants raise four arguments in support of their motions to dismiss. First, Defendants argue Plaintiffs' action is barred by res judicata, because an identical action was dismissed in Connecticut Superior Court. (Defs.' Mem. at 13; Ex. 22.) Second, Defendants argue Plaintiffs lack standing to bring suit, because Plaintiffs' claims belong to the Chapter 7 trustee. (*Id.* at 16.) Third, they assert Plaintiffs' claims are untimely. (*Id.* at 17–19.) Finally, Defendants argue Plaintiffs' complaint fails to state a claim upon which relief can be granted. (*Id.* at 20.) Before analyzing these arguments, the court will briefly address two preliminary matters raised in Plaintiffs' brief.

A. <u>Subject-Matter Jurisdiction</u>

Plaintiffs suggest that removal to this court was improper and the court lacks subject-matter jurisdiction because the Massachusetts Superior Court action was consolidated with the summary process action, making Aurora the plaintiff and thus incapable of removing an action to federal court. The court does not agree. The actions were consolidated for "hearing purposes only," (Dkt. No. 10 at 5), which the court takes to mean that the summary process action remained a separate case and thus properly was not removed along with the Massachusetts Superior Court action. *See, e.g., Boston Water & Sewer Com'n v. Automatic Switch Co.*, 2010 WL 759125, at *1 n. 2 (Mass. App. Ct. Mar. 8, 2010) (noting that the actions were consolidated "for hearing purposes" but retained separate trial court docket numbers). This conclusion is supported by Plaintiffs' own allegations that

the summary process action has been stayed pending disposition of this controversy. (Pls.' Mem at 10, 14.) Accordingly, the court concludes that it has jurisdiction over this controversy.

B.  Violation of Local Rule 7.1(B)(4)

Plaintiffs also notes that Aurora, US Bank, and MERS submitted a thirty-one page memorandum in violation of Local Rule 7.1(B)(4), which provides that "[m]emoranda supporting or opposing allowance of motions shall not, without leave of court, exceed twenty (20) pages, double-spaced." Although the court may be inclined to excuse an excess memorandum of a *pro se* party, *see Tian v. Aspen Tech., Inc.*, 53 F. Supp. 3d 345, 360 (D. Mass. 2014), represented parties are expected to adhere to the local rules. However, while "[f]ailure to comply with . . . Local Rules may result in dismissal, default, or the imposition of other sanctions," Local Rule 1.3, courts have "broad latitude in administering local rules," *Air Line Pilots Ass'n v. Precision Valley Aviation, Inc.*, 26 F.3d 220, 224 (1st Cir. 1994), and may choose to forgive a party's violation of a local rule. *See United States v. Diaz–Villafane*, 874 F.2d 43, 46 (1st Cir. 1989). As Plaintiffs have not demonstrated any prejudice from this violation, the court chooses not impose sanctions in this case.[3]

C.  Res Judicata

Defendants assert the Connecticut court's dismissal for failure to prosecute bars the present action on *res judicata* grounds. In Connecticut, however, "failure to prosecute with reasonable diligence" is not an adjudication on the merits and does not "bar a subsequent action on the same claim." *Milgrim v. Deluca*, 487 A.2d 522, 524-25 (Conn. 1985); *see also Testa v. Santopietro*, 1999 WL 1120403, at *1 (D. Conn. Nov. 17, 1999) ("[A] dismissal for failure to prosecute pursuant to Practice Book § [14-3] . . . is not an adjudication on the merits that can be treated as res judicata." (internal quotation marks omitted)). Accordingly, Plaintiffs' present action is not barred by *res judicata*.

---

[3] The court notes that Plaintiffs themselves failed to file a timely opposition to MCS's motion to dismiss, despite receiving a ninety-day extension to do so. (Dkt. Nos. 28, 23.) Nevertheless, the court permitted Plaintiffs to file the opposition over three months after the already-extended deadline. (Dkt. No. 36.)

Nevertheless, the Connecticut dismissal for want of prosecution and subsequent re-filing of the action in Massachusetts is not without significance. As discussed below, many of Plaintiffs' claims are now barred by the statute of limitations. *See Jones v. Binette*, 19 F. App'x. 6, 6 (1st Cir. 2001) (recognizing that dismissals for "failure to prosecute" do not fit within the Massachusetts renewal statute, Mass. Gen. Laws ch. 260, § 32, which permits the refiling within one year of certain actions dismissed "for any matter of form" so as to avoid application of the statute of limitations bar (citing *Cumming v. Jacobs*, 130 Mass. 419, 421 (1881))).

D.  Plaintiffs' Standing

Defendants next argue Plaintiffs lack standing to file this action because Thomas filed for bankruptcy. (Defs.' Mem. at 16.) The court does not agree.

Under the Bankruptcy Code, "'[a]ll legal or equitable interests of the debtor in property' as of the commencement of the bankruptcy, including causes of action, become property of the bankruptcy estate." *In re Furlong*, 660 F.3d 81, 86 (1st Cir. 2011) (quoting 11 U.S.C. § 541(a)(1)). "So long as the claims remain in the bankruptcy estate, 'the trustee steps into the shoes of the debtor for purposes of asserting or maintaining the debtor's causes of action[].'" *Id.* at 86 (quoting *DiMaio Family Pizza & Luncheonette, Inc. v. The Charter Oak Fire Ins. Co.*, 448 F.3d 460, 463 (1st Cir. 2006)). Accordingly, "a debtor no longer has standing to pursue his claims once they become property of the estate upon the commencement of the bankruptcy case," *Hutchins v. Shatz, Schwartz & Fentin, P.C.* 494 B.R. 108, 114 (D. Mass. 2013) (internal quotation marks omitted), unless the debtor properly schedules the claims under 11 U.S.C. § 521(a)(1) and those claims thereafter are abandoned by the estate. *In re Furlong*, 660 F.3d at 86; *Brooks v. Beatty*, 1994 WL 224160, at *3 (1st Cir. May 27, 1994) (unpublished).

Defendants' standing argument is premised on the erroneous assertion that Thomas never scheduled any mortgage-related claims in the bankruptcy proceeding. In fact, Thomas scheduled as

an asset "[t]ruth in lending, mortgage, foreclosure, and related violations, and any other violations, concerning validity and extent of mortgage(s) on 270 Park Drive, Longmeadow, MA." (*In re LaCasse*, Dkt. Nos. 244, 247.) This language is broad enough to encompass claims that challenge the mortgage or the foreclosure. *See In re Furlong*, 660 F.3d at 87 (explaining that "a debtor is required only to 'do enough itemizing to enable the trustee to determine whether to investigate further'" (quoting *Payne v. Wood*, 775 F.2d 202, 207 (7th Cir. 1985)).

Arguably, by limiting the claims to those that "concern[] [the] validity and extent of the mortgage(s)," Thomas's amended Schedule B does not encompass all of the claims he asserts here.[4] In particular, Count 6 asserts a defamation claim based on the foreclosure notices; Count 7 asserts a "forcible entry" claim based on a violation of Mass. Gen. Laws ch. 184, § 18, which prohibits self-help evictions; and Count 8 asserts a breach of contract claim based on purported violations of the mortgage for changing locks and inspecting the property. Importantly, however, "[t]he estate is normally comprised only of property and interests therein belonging to the debtor at the time the petition is filed." *In re Massillon*, 2011 WL 1496101, at *4 (1st Cir. BAP Jan. 11, 2011) (quoting *Patrick A. Casey, P.A. v. Hochman*, 963 F.2d 1347, 1350 (10th Cir. 1992); *see* 11 U.S.C. § 541(a)(1) (stating that the "estate is comprised of" "all legal or equitable interests of the debtor in property *as of the commencement of the case*" (emphasis added)). "Property which a debtor subsequently acquires 'does not become property of the estate, but becomes the debtor's, clear of all claims that are discharged by the bankruptcy proceedings.'" *In re Massillon*, 2011 WL 1496101, at *4 (quoting *Patrick A. Casey, P.A.*, 963 F.2d at 1350); *see also In re Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996) ("We emphasize § 541(a)(1) limits estate property to the debtor's interests 'as of the commencement of the case.' This phrase places both temporal and qualitative limitations on the reach of the

---

[4] Of course, this standing analysis necessarily applies only to the claims asserted by Thomas, and not the claims asserted solely on behalf of Joseph, *i.e.,* Counts 10 and 11.

bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become the property of the bankruptcy estate.") Here, the foreclosure notices were published in October and November of 2010, after the commencement of the bankruptcy case.[5] And although, as discussed below, Plaintiffs have not provided dates in connection with Counts 7 and 8, the court infers the events giving rise to these claims did not occur until after the foreclosure sale, which itself occurred on November 22, 2010, also after the commencement of the bankruptcy case.

Accordingly, as all of Thomas's claims were either sufficiently scheduled and thereafter abandoned, *see* 11 U.S.C. § 554(c), or did not accrue until after the commencement of the bankruptcy proceeding, the court concludes that he does not lack standing to pursue them now.

E. <u>Individual Counts</u>

  1. <u>Count 1 (Predatory Lending Practice – Breach of Contract)</u>

Count 1 seeks recovery for Defendants' alleged "Predatory Lending Practices," which "irreversibly injured" Plaintiffs. (Compl. ¶ 44–45.) Defendants assert this claim is untimely. (Defs.' Mem. at 19, 20, 22.) Plaintiffs respond that Count 1 is a breach of contract claim, and Massachusetts's six-year statute of limitations applies. (Pls.' Mem. at 10.) The court agrees with Defendants.

Regardless of the label Plaintiffs give their claims, "[t]he essential nature of the right asserted determines the appropriate statute of limitations." *See Micera v. Neworld Bank*, 592 N.E.2d 1294, 1297 (Mass. 1992). In determining the essential nature of a plaintiff's claim, Massachusetts courts generally look to the injury the plaintiff seeks redressed and the nature of the remedy the court would grant. *TH Claims, LLC v. Town of Hingham*, 2013 WL 6431233, at *2 (Mass. App. Ct. Dec. 10,

---

[5] Moreover, the Order of Notice of the Servicemembers Civil Relief Act, which also forms the basis of the defamation claim, was published in September of 2010, after the commencement of the bankruptcy case. (Defs.' Mem, Ex. 9.)

2013) (unpublished) (holding that a sixty-day limitations period for appeals applied to claims the plaintiff pleaded "in the guise of a contract and tort-dispute," but which actually sought to challenge an enforcement order).

In the present case, Plaintiffs allege Defendants engaged in a "fraudulent," illegal foreclosure, and other "illegal and predatory acts." (Compl. ¶¶ 43–44.) Despite labeling this claim contractual, Plaintiffs have not alleged any portion of the mortgage agreement which was breached. Instead, they allege Defendants engaged in "Predatory Lending Practices" that have "irreversibly injured" Plaintiffs. (Compl. ¶ 45.) Thus, the alleged injury, and hence the basis of recovery, is asserted under the Predatory Home Loans Practices Act, Mass. Gen. Laws ch. 183C, §§ 1 et seq. The appropriate statute of limitations under this Act is five years from the signing of the mortgage. *See* Mass. Gen. Laws ch. 183C, § 15(b)(1). As the mortgage was signed on November 15, 2006, and this case was filed on February 18, 2015, Count 1 is untimely and must be dismissed. *See Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc.*, 489 N.E.2d 172, 175 (Mass. 1986) (plaintiffs may not evade "the consequences of a statute of repose or statute of limitations . . . merely by labelling [their] claim as contractual.").[6]

Even if the court could interpret Count 1 as alleging a breach of contract claim, it is nonetheless subject to dismissal for failing to state a claim. A breach of contract claim is subject to dismissal if it fails to "plead: (1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (citing *Singarella v. City of Boston*, 173 N.E.2d 290, 291 (Mass. 1961)); *Petricca v. Simpson*, 862 F. Supp. 13, 17 (D. Mass. 1994)). Here, Plaintiffs did not plead they were ready, willing, and able

---

[6] Moreover, to the extent Count 1 could be construed as asserting a tort claim in addition to, or in place of, a claim under the Predatory Home Loans Practices Act, the general three-year tort statute of limitations also would bar such claim. *See* Mass Gen. Laws ch. 260, § 2A.

10

to perform were it not for defendants' breach, nor that the alleged breach harmed them. In fact, as mentioned, Plaintiffs have not identified any violated clause of the mortgage agreement. Accordingly, Plaintiffs have also failed to state a cause of action for a breach of contract.

Count 1 will be dismissed.

2. Count 2 (Breach of Contract)

In Count 2, Plaintiffs allege Defendants breached the mortgage agreement when MERS assigned the mortgage without having the authority to do so, and when Aurora sold Plaintiffs' property without having authority to do so. (Compl. ¶ 49–52.) Both of these claims, Defendants assert, are erroneous as a matter of law. (Defs.' Mem at 21–23.) Again, the court agrees with Defendants.

Contrary to Plaintiffs' allegations, the current law in Massachusetts is "unequivocal" that "MERS may validly possess and assign a legal interest in a mortgage." *Serra v. Quantum Servicing, Corp.*, 747 F.3d 37, 40 (1st Cir. 2014). Thus, Plaintiffs' first argument is erroneous. Plaintiffs' second argument rests on the idea that "any flaw [in the assignment] is fatal" to it and, because MERS's address on the mortgage agreement differs from the one on the assignment, the assignment is fatally flawed. (Pls.' Mem. at 11.) However, an error in the address of the mortgagee or assignee does "not affect the validity of any mortgage or assignment of a mortgage or the recording thereof." Mass. Gen. Laws ch. 183, § 6C. Plaintiffs cannot recover on this claim and it will be dismissed.[7]

---

[7] In support of their argument that the assignment was void, Plaintiffs allege a new fact in one of their opposition briefs, which is entirely absent from the complaint: "Theodore Schultz, is not and never was an authorized signatory for MERS." (Dkt. No. 37, at 5.) They have not, however, filed a motion seeking leave to amend the complaint, and it is well established that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Luthy v. Proulx*, 464 F. Supp. 2d 69, 74 n. 25 (D. Mass. 2006) (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

3.  Count 3 (Fraud)

In Count 3, Plaintiffs allege Defendants committed fraud by inducing Thomas to enter the mortgage, by sending him "fallacious and fraudulent legal papers"[8] while he resided in Connecticut, and by fraudulently assigning the mortgage. (Compl. ¶ 56–57, 58, 61.) In both Massachusetts and Connecticut, an action for fraud, as a tort, has a three-year statute of limitations. *See* Mass. Gen. Laws ch. 260, 2A; Conn. Gen. Stat. § 52-577. While under Massachusetts law the limitations period is tolled until an injury is discovered, Connecticut's limitations period begins to run at the moment the act complained of occurs. *See Lyons v. Nutt*, 763 N.E.2d 1065, 1068–69 (Mass. 2002); *Bello v. Barden Corp.*, 180 F. Supp. 2d 300, 310 (D. Conn. 2002) (citing *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 476 (Conn. 1996)). Under either approach, however, Plaintiffs allegations of fraud are untimely. It is clear the alleged fraud had occurred and Plaintiffs discovered it by December 8, 2010—the date Plaintiffs filed identical allegations of fraud in the Connecticut Superior Court. (Defs.' Mem., Ex. 19 at 9–10.) Thus, the limitations period expired no later than December 8, 2013, and Count 3 is time-barred.

4.  Count 4 (Unconscionability)

In Count 4, Plaintiffs seek recovery for Defendants' "intentional, fraudulent, and or grossly irresponsible misrepresentation of authority" on the grounds that it was unconscionable. (Compl. ¶ 66.) Unconscionability, however, is an affirmative defense and not a stand-alone cause of action. *See, e.g., Li'l Peach of Massachusetts, Inc. v. Prendergast*, 1996 WL 1251389, at *2 (Mass. Super. Aug. 15, 1996) ("The counterclaim for unconscionable contract does not state a claim . . . ."). Thus, Count 4 fails to state a claim and must be dismissed.

---

[8] Subsumed within this count, Plaintiffs allege Aurora perpetrated mail fraud under 18 U.S.C. § 1341. Section 1341, however, does not create a private cause of action. *See Liu v. Amerco*, 677 F.3d 489, 494 (1st Cir. 2012). Accordingly, the court will interpret Count 3 as alleging common-law fraud only.

5. Count 5 (Breach of the Implied Covenant of Good Faith and Fair Dealing)

While labeling Count 5 as a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs seek recovery for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f. (Compl. ¶¶ 70–72.) As the essential nature of the claim determines the appropriate statute of limitations, *see RTR Technologies v. Helming*, 815 F. Supp. 2d 411, 420 (D. Mass. 2011), *aff'd*, 707 F.3d 84 (1st Cir. 2013) (citing *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967)), FDCPA's one-year statute of limitations applies to this count. *See* 15 U.S.C. § 1692k(d). This claim accrued no later than December 8, 2010—the day Plaintiffs filed a FDCPA claim based on the same allegations in Connecticut court. (Defs.' Mem., Ex. 19 at 12.) Accordingly, the limitations period expired no later than December 8, 2011, and Count 5 is time-barred.

6. Count 6 (Damages to Thomas's Reputation in the Community)

In Count 6, Plaintiffs assert "Aurora, by publishing foreclosure sale notices, and by publishing the Order of Notice on the Servicemembers Civil Relief Act, ha[s] damage[d] the reputation of Thomas in the community." (Compl. ¶ 77.) Defendants argue, and the court agrees, that the three-year statute of limitations for torts applies to this defamation claim. See Mass. Gen. Laws ch. 260, § 2A. The foreclosures notices were published in The Republican from October 29, 2010 until November 12, 2010, and the Order of Notice was published in September of 2010. (Compl., Ex. 1 at 1, 3, 5; Defs.' Mem, Ex. 9.) Even if Plaintiffs were not aware of these notices at that time, Plaintiffs were certainly aware of them by December 8, 2010—the date they challenged the foreclosure as fraudulent. (Defs.' Mem., Ex. 19 at 5, 6, 10.) Plaintiffs specifically referenced the "notice[ ] [filed in] the Land Court" as well as the "notices of a foreclosure sale" in their Connecticut complaint. (Id., Ex. 19 at 5, 10.) Thus, the limitations period expired no later than December 8, 2013, and the present claim is untimely.

To avoid the statute of limitations, Plaintiffs assert that Count 6 seeks recovery for consequential damages for a breach of contract. (Pls.' Mem. at 10.) Massachusetts, however, does not permit recovery of consequential damages for injury to reputation. *See McCone v. New England Tel. & Tel. Co.*, 471 N.E.2d 47, 50 n. 8 (Mass. 1984). Accordingly, to the extent Count 6 alleges a contractual claim, it fails as a matter of law. Therefore, Count 6 will be dismissed.

7. <u>Count 7 (Forcible Entry)</u>

In Count 7, Plaintiffs assert Defendants violated Mass. Gen. Laws ch. 184, § 18, by "us[ing] force" to take "all or part of Thomas's property without any justification" and Plaintiffs, therefore, are entitled to recover their property. (Compl. ¶¶ 83–84.) Section 18 prohibits self-help evictions and provides, in relevant part:

> No person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to [the Massachusetts summary process statute] or such other proceedings as authorized by law. The Superior and district courts shall have jurisdiction in equity to enforce he provisions of this section

Mass. Gen. Laws ch. 184, § 18.

Although Plaintiffs seek equitable relief, as authorized by section 18, "[i]n Massachusetts the statute of limitations applicable to law actions based on contract and tort are also applicable to suits in equity." *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F. Supp. 2d 301, 302 n. 7 (D. Mass. 2012), *aff'd*, 727 F.3d 10 (1st Cir. 2013) (quoting *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir. 1967)). To "determine what statute of limitations to apply," the court "must look to the gist of the action or the essential nature of the plaintiff's claims." *Id.* (quoting *Palandjian v. Pahlavi*, 614 F. Supp. 1569, 1577 (D. Mass. 1985)). Here, as Defendants argue, Plaintiff's claim for "forcible entry" is in the nature of a tort. Accordingly, the three year tort statute of limitations applies. *See* Mass. Gen. Laws. ch. 260, § 2A. Nonetheless, Plaintiffs have not alleged when the acts supporting this claim occurred. To the extent it is the entry on November 22, 2010, this claim is untimely. However, a court may dismiss a claim as untimely at this stage only if

the complaint and any relevant documents "leave no doubt that an asserted claim is time-barred." *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (citation omitted). As the date the alleged forcible entry occurred is unclear, the court cannot dismiss this claim as untimely.

Nonetheless, the court concludes Plaintiffs have failed to allege sufficient facts in support of their claim so as to give Defendants "adequate notice . . . and a meaningful opportunity to mount a defense." *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotation marks omitted). "[T]he complaint should at least set forth minimal facts as to who did what to whom, *when*, where, and why . . . ." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (emphasis added). Plaintiffs failed to allege when the forcible entry occurred and did not allege the basic facts as to what occurred. It is alleged in conclusory fashion "Defendants have taken all or part of Thomas's property without any justification in law" and "have used force in doing this." (Compl. ¶ 83, 84.) Moreover, by asserting this claim collectively against all Defendants, when it cannot be reasonably inferred that all Defendants were involved, the complaint does not comply with Rule 8 of the Federal Rules of Civil Procedure. *See Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005) (unpublished) (holding the complaint was deficient because "it failed to state which defendant or defendants committed each of the alleged wrongful acts"); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (unpublished) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy this minimum [pleading] standard . . . ."). Plaintiffs' allegations, which essentially say no more than "the-defendant-unlawfully-harmed-me," are plainly insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the court will dismiss Count 7, but without prejudice.[9]

---

[9] The court dismisses this claim as well as Count 10 without prejudice in light of the fact that Plaintiffs were without counsel, through no fault of their own, during a time they could and should have sought to amend their complaint to cure the deficiencies which render the claims subject to dismissal. *See, e.g.*, *Dodson v. Reno*, 1997 WL 563384, at *3 (1st Cir. Sept. 11, 1997) ("We therefore affirm the district court, but in view of his *pro se* status modify the judgment to reflect that the dismissal is without prejudice.").

8.  Count 8 (Breach of Contract)

In Count 8, Plaintiffs assert Defendants breached the mortgage agreement in two ways: first, by entering the property and changing locks; and second, by entering the property without notice. (Compl. ¶¶ 87–91.) A claim for a breach of contract must include, "(1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged." *Doyle*, 103 F.3d at 194. A claim that fails to allege these facts may be dismissed. *Id.*

Plaintiffs do not allege the mortgage agreement forbids Defendants from entering the property and changing the locks, but actually cite the contract provision that permits Defendants to enter "the Property to make repairs, change locks, replace or board up doors and windows." (Compl. ¶ 87; Ex. 3 ¶ 9.) Instead, they allege this provision is contrary to Massachusetts law. (Compl. ¶ 88.) But, even if true, that does not constitute a breach of contract. Accordingly, Plaintiffs have not pled facts demonstrating that Defendants breached the mortgage agreement under their first theory, thus warranting dismissal. *See Doyle*, 103 F.3d at 194.

Plaintiffs' second argument also fails. The mortgage provides: "Lender or its agent may make reasonable entries upon and inspection of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such interior inspection specifying such reasonable notice." (Compl., Ex. 3 ¶ 7.) Plaintiffs allege that Defendants inspected the interior of the property without notification, (Compl. ¶ 91), which would constitute a breach of the contract. Nonetheless, Plaintiffs have not alleged "that [they] were damaged" as a result of this breach. *Doyle*, 103 F.3d at 194. Nor have they alleged when the inspection occurred or who inspected the property. *See Educadores Puertorriquenos en Accion*, 367 F.3d at 68 ("[T]he complaint should at least set forth minimal facts as to who did what to whom,

*when*, where, and why . . . ."). Accordingly, Plaintiffs failed to allege sufficient facts to make recovery plausible and put Defendants on notice. The court will therefore dismiss Count 8.

9. Count 9 (Violation of Consumer Protection Statute Mass. Gen. Law ch 93A, § 11)

In Count 9, Plaintiffs seek recovery for all the aforementioned allegations construed as violations of Mass. Gen. Laws ch. 93A, § 11. (Compl. ¶¶ 98–101.) Thus, Plaintiff's Chapter 93A claim is derivative of the claims the court has dismissed. With the underlying claims dismissed, the Chapter 93A claim must also fail, because it "does not create a cause of action 'in the absence of a cognizable underlying claim of unfair practices.'" *Rodriguez v. Nationstar Mortg. LLC*, 2014 WL 5426972, at *3 (D. Mass. Oct. 24, 2014) (citations omitted); *see also Falmouth Nat. Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1065 (1st Cir. 1990). Moreover, to the extent Count 9 relies on the alleged fraudulent mortgage, invalid assignment, or wrongful foreclosure, Count 9 is untimely. As Plaintiffs included these allegations in their Connecticut complaint, they were on notice of a Chapter 93A claim based on these facts no later than December 8, 2010.  Thus, the four-year limitations period for the Chapter 93A claim expired no later than December 8, 2014, barring the present claim. *See* Mass. Gen. Laws ch. 260, § 5A. (Defs.' Mem., Ex. 19.) For these reasons, Count 9 will be dismissed.

10. Count 10 (Conversion)

In Count 10, Joseph asserts a conversion claim, alleging "Defendants have transported [his] personal property from the Property" and "all of these dispossessed property items were kept inside in locked areas." (Compl. ¶ 103.) As conversion is a tort, a three-year statute of limitations applies. *See* Mass. Gen. Laws ch. 260, § 2A. The complaint is entirely silent, however, as to when the alleged conversion took place.[10] In the absence of a reference to a concrete date, the court cannot conclude

---

[10] In their brief, Plaintiffs claim "it is not clear when the thugs from Mortgage Contracting Service stole Joseph's personal property." (Pls.' Mem. at 10.) The court reiterates that a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Luthy*, 464 F. Supp. 2d at 74 n. 25 (quoting *Car Carriers.*, 745 F.2d at 1107).

that this claim is untimely. *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (citation omitted).

Nonetheless, the failure to specify relevant facts renders Joseph's conversion claim insufficient. As explained above, a claim is insufficient if it fails to allege at least "who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion*, 367 F.3d at 68. Here, the complaint fails to allege when the conversion occurred and what was taken. The allegations are conclusory and thus insufficient to state a claim upon which relief may be granted. *See Rice v. Spencer*, 2014 WL 2453104, at *2 (D. Mass. May 29, 2014) (holding as conclusory and insufficient the plaintiff's allegation that "three defendants did seize Plaintiff's property, destroy Plaintiff's property, contaminated his property and sexually harassed him"). Moreover, as was the case with Count 7, by asserting this claim collectively against all Defendants, the complaint fails to comply with Rule 8. *See Bagheri*, 160 F. App'x at 5. In failing to meet these minimal requirements, the complaint does not "give [Defendants] fair notice of what [Plaintiff'] claim is and the grounds upon which it rests," *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006), nor does it provide Defendants with "a meaningful opportunity to mount a defense," *Diaz-Rivera*, 377 F.3d at 124 (internal quotation marks omitted). Accordingly, the court will dismiss Count 10, but without prejudice. *See supra* footnote 9.

11. <u>Count 11 (Loss of Use of Property)</u>

In Count 11, Plaintiffs allege "Joseph lost enjoyment of the Property for over a year, guaranteed by his lease to use the Property." (Compl. ¶ 108.) Defendants assert that this Count is barred by the statute of limitations and is insufficiently pled. (Defs.' Mem. at 19, 30.) Again, the court agrees with Defendants.[11]

---

[11] Plaintiffs assert judicial estoppel prevents the dismissal of this count, because Aurora allegedly promised "not to interfere with [Plaintiff's] tenancy until the Summary Process was over." (Pls.' Mem. at 17.) The doctrine of judicial estoppel protects the integrity of the courts by prohibiting a party from taking a position contradictory to one it assumed in a prior judicial proceeding. *See Paixao v. Paixao*, 708 N.E.2d 91, 93 (Mass. 1999); *Sandman v. McGrath*, 943 N.E.2d 945 (Mass. App. Ct. 2011). Plaintiffs have not alleged that Aurora's promise was made in a court proceeding. Even assuming such a promise was made in a court proceeding, a promise not to interfere with a tenancy in the future is not in direct

In Count 11, Plaintiffs fail to "identify[] the nature of [the] claim." *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 90 (1st Cir 2014) (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 949 (1st Cir. 2008)). In their brief, Plaintiffs clarify that "Count 11 is asking for damages as a third party contract beneficiary." (Pls.' Mem. at 10.) The third-party beneficiary doctrine is inapplicable to this claim, which is grounded in an alleged lease agreement between Joseph and Thomas—to which Defendants are not a party. Moreover, as to the contract between Thomas and Aurora (as an assignee of MERS), Plaintiffs have not alleged Joseph was an "intended beneficiar[y] of the contract." *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 42 (Mass. 2009); *see also id.* at 44 ("Under Massachusetts law, a contract does not confer third-party beneficiary status unless the 'language and circumstances of the contract' show that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiary to benefit from the promised performance." (quoting *Anderson v. Fox Hill Village Homeowners Corp.*, 676 N.E.2d 821, 822 (Mass. 1997))). In fact, from the court's review of the mortgage, there is no mention of Joseph whatsoever. Accordingly, even under this third-party beneficiary theory, Count 11 fails as a matter of law.

V. CONCLUSION

For the foregoing reasons, the court ALLOWS Defendants' motions to dismiss (Dkt. Nos. 11 and 24) in their entirety, but dismisses Counts 7 and 10 without prejudice. The clerk shall enter judgment for Defendants, and this case may now be closed.

It Is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

---

contradiction to a motion to dismiss a claim for prior interference with that tenancy. Accordingly, Plaintiffs have not demonstrated that judicial estoppel bars this motion.